Mario Pittoni, J.
The mother of Jay Katzeff, a 14-year-old boy, petitions for his custody. The boy is now living with the respondent, Jerry Katzeff, his father. It appears that on or about August 16, 1959, the father, without the consent of the mother, and at the end of the Summer camp season, took the boy from camp and brought him to the father’s home in The Bronx. Here, the father was living with a woman whom he claims to be his present wife. However, this present marital state is rather nebulous. Certain documents purporting to establish a Mexican divorce between the father and mother *453 were introduced in evidence. However, the mother at no time filed any notice of appearance, consent, answer, or any other document which could give the Mexican court jurisdiction. It also appears that the father abandoned the mother and his children some time in December, 1957, and that he thereafter socialized and consorted with the woman with whom he is now living. There is also testimony by this woman’s former husband that one night in April, 1958 he found his then wife in a state of undress in a bedroom of her apartment with the respondent father. A divorce between these two followed.
After August 16, 1959, the day the father took the boy from camp, he contracted to purchase his home in Massapequa. The father, his present wife, her daughter and the boy now live there. The boy and the daughter of the present wife are nearly the same age. There is. no one to supervise them during the day while both the father and the present wife are employed.
Prior to August 16, 1959, when the father took him, the boy and his sister Gaye, aged 12, had continuously resided with their mother. The father, however, argues that he should get custody of the child for the following reasons:
‘ ‘ 1. The boy has privacy in a room of his own, well appointed and exclusively his — in a home, having plenty of playroom — as well as for study — and also in the happy environment of a library, good books and companionship of a girl his own age, the daughter of Hilda Katzeff; all occupants sheltered in an elegant new home, near a good school and in a new development.
“ 2. The boy is happy in bis new home and has undoubtedly expressed his preference to remain with his father (this is offered with apology to the Court, since this information was gleaned by the Court) but the young man has outwardly expressed his preferences to counsel and although dehors the record; must of compelling necessity be a favorable inducing consideration to be taken under advisement by the Court.
11 3. The combined incomes of Respondent and his new wife are adequate to insure comfort and security for the boy as compared to a lack of security with his mother whose income is limited to what she may derive from the limited Domestic Relations Court Order allocating $75. for the total support of mother, daughter and son.
‘ ‘ 4. The respondent may not be a rugged symbol of quiet rectitude, yet character formation is not an infectious stigmatism but is the result of cosmic development. No detriment should be predicted by mere association with a person not his real mother.
1 ‘ 5. Mother love is unassailable but indulgence does not always prescribe the proper yardstick for discipline.
*454 “ 6. Custody should not he awarded by way of reward or as punishment to either parent. ’ ’
The arguments on behalf of the father have been quoted in full lest they be mis-stated or misinterpreted.
It is agreed among all the parties that the welfare of the boy is predominant; that is in keeping with the law anyway.
The circumstances of this case establish that the welfare of the boy is best developed in the custody of his mother. It is true that the boy may have more conveniences and attractions in the brand new home in suburban Massapequa, and that he may have a happier, freer life there. In fact, the boy might even prefer to stay with his father under the present conditions. However, nothing has been shown to establish that the mother is incapable of properly caring for her children nor to establish that she is unfit. All the evidence seems to point in the other direction. She may appear emotionally unstable at this time; but that is understandable; she has been abandoned by her husband in favor of a more attractive and physically desirable woman, and her son has been taken away from her. The mother, however, is in a better position to exercise the necessary parental care and discipline which will help to make the boy a good man and a better citizen. Letting the boy remain in an attractive but morally tainted home will not develop his good moral standards. Glamor and glitter should not be permitted to displace good moral parental care, supervision and discipline. The boy did privately express an opinion to the court in chambers ; but regardless of his preference he is not in a position to evaluate what is best for his present and future development.
The argument that the father has better financial facilities to care for the boy in his present home does not overcome the other considerations. If the $75 per week ordered by the Domestic Relations Court is not sufficient to care for his abandoned wife, daughter and son in the state he deems warranted for his son the father has the privilege of increasing the weekly payments.
The mother shall have custody of the boy Jay Katzeff.
The father shall have the right to have the boy each and every Sunday, from 9:00 a.m. to 10:00 p.m. This permits him to take the boy anywhere within the First, Second and Tenth Judicial Districts. He shall also have the right to have the boy for one month during the Summer vacation period. He has the privilege of choosing July or August, but upon written notice by registered mail to the mother sent on or before June 1 of each Summer. This permits him to take the boy anywhere in the State of New York, but not outside.
Settle order on notice.